UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER CLARK,<br><br>                Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>                Defendant. | Case No. EDCV 09-1883 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I.    SUMMARY**

On October 15, 2009, plaintiff Tyler Clark ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; October 16, 2009 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand because the Administrative Law Judge ("ALJ") erroneously failed to address lay witness testimony supplied by plaintiff's mother and the Court cannot find such error to be harmless.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 28, 2007, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 8, 62). Plaintiff asserted that he became disabled on December 15, 2006, due to: "Post pardom [sic] stress due to violent act." (AR 136). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert, a vocational expert and plaintiff's mother on January 27, 2009. (AR 22-61).

On May 29, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 5-21). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments, even apart from symptoms related to plaintiff's substance abuse: Organic affective disorder, secondary to mixed substance abuse including amphetamines; personality disorder, not otherwise specified; and polysubstance abuse disorder (AR 10, 14); (2) plaintiff's impairments, including the substance abuse disorders, met the listed impairments in sections 12.02, 12.08 and 12.09, but if plaintiff stopped his substance abuse, plaintiff had no impairments that, considered singly or in combination, met or medically equaled any of the listed impairments (AR 12, 14-15); (3) if plaintiff stopped his substance abuse, he retained the residual functional capacity to perform a wide range of work at all exertional levels with certain

///

1  nonexertional limitations[1] (AR 15-16); (4) plaintiff had no past relevant work (AR
2  20); (5) if the plaintiff stopped his substance abuse, there are jobs that exist in
3  significant numbers in the national economy that plaintiff could perform (AR 20-
4  21); and (6) plaintiff's allegations regarding his limitations were not totally
5  credible (AR 16-17).

   The Appeals Council denied plaintiff's application for review.  (AR 1).

### III.  APPLICABLE LEGAL STANDARDS

#### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

---

[1] More specifically, the ALJ determined that plaintiff:  (i) was restricted to object oriented work in an environment with a small number of people; (ii) could not work with the public; and (iii) could only perform simple repetitive tasks, but not in a fast paced environment (*e.g.*, rapid assembly line).  (AR 15-16).

3

|     |     |     |
| --- | --- | --- |
| 1   | (3) | Does the claimant's impairment, or combination of |
| 2   |     | impairments, meet or equal an impairment listed in 20 C.F.R. |
| 3   |     | Part 404, Subpart P, Appendix 1?  If so, the claimant is |
| 4   |     | disabled.  If not, proceed to step four. |
| 5   | (4) | Does the claimant possess the residual functional capacity to |
| 6   |     | perform his past relevant work?  If so, the claimant is not |
| 7   |     | disabled.  If not, proceed to step five. |
| 8   | (5) | Does the claimant's residual functional capacity, when |
| 9   |     | considered with the claimant's age, education, and work |
| 10  |     | experience, allow him to adjust to other work that exists in |
| 11  |     | significant numbers in the national economy?  If so, the |
| 12  |     | claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

1   To determine whether substantial evidence supports a finding, a court must
2   "'consider the record as a whole, weighing both evidence that supports and
3   evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.
4   Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
5   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
6   or reversing the ALJ's conclusion, a court may not substitute its judgment for that
7   of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.   DISCUSSION**

   **A.   A Remand is Appropriate Because the ALJ Erroneously Failed to Address the Lay Testimony Supplied by Plaintiff's Mother and the Court Cannot Find That Such Error Was Harmless**

Plaintiff contends that a reversal or remand is appropriate because the ALJ failed adequately to address the testimony supplied by plaintiff's mother and to provide adequate reasons for rejecting such evidence.  The Court agrees.  As this Court cannot find that the ALJ's error was harmless, a remand is warranted.

   **1.   Pertinent Facts**

On January 27, 2009, at the administrative hearing, plaintiff testified regarding his symptoms and limitations.  (AR 25-32, 37-47).  He stated, *inter alia*, that he:  (i) had been beaten and tortured by unnamed individuals for approximately two to three hours and then dropped off at a park where he went to a neighbor and called his mother for help (AR 38-40); (ii) was told by the attackers, who were never caught, that they would kill him if he "ever told anybody" (AR 38); (iii) suffered serious injuries from the attack (*i.e.* broken nose, saw cut to the wrist, and burns on his leg from a torch) (AR 39); (iv) used to be very social but after the attack, became very paranoid, and felt "just in a hole, sitting there," and was constantly "watching [his] back" in public out of fear that someone might still want to harm him (AR 38, 41); (v) had difficulty with concentration and memory, and was easily distracted as a result of the attack (AR

27, 37, 41, 43); (vi) was more polite, tolerant and nice to people due to the attack (AR 40); (vii) felt tired and had "a lot of mood swings" from his medication (AR 42-44); (viii) last used "street drugs" in July of 2008 including marijuana and "speed," but did not have a drinking problem that would keep him from working (AR 28, 32).

At the January 27, 2009 administrative hearing, plaintiff's mother testified, *inter alia*, as follows: (i) after he was attacked, plaintiff had actually been found at 4:30 a.m. bleeding and unconscious on the side of the road (AR 47-48); (ii) when he awoke, plaintiff had told the man who found him to not call the police because his attackers had threatened to kill plaintiff's family (AR 48); (iii) plaintiff had also suffered "multiple facial fractures," round blister marks on his legs (from being placed by his attackers in a freezer for an undetermined period of time), "a frontal lobe brain injury," a "huge laceration" over his eye, multiple head contusions from being hit "repeatedly with the back of a gun," and swastika marks carved with a knife on the back of each of his thighs (AR 48-49); (iv) two days after the attack, plaintiff and his family moved away from the area out of fear for plaintiff's safety (AR 50); (v) Dr. Cameron Johnson at Loma Linda Behavioral Medical Center "discovered that [plaintiff] had a frontal lobe brain injury that coincided with [plaintiff's] behavior that could be misinterpreted for doing drugs" (AR 50); (vi) based on an assessment in July 2008, plaintiff had been told he was "not ready for any gainful employment" (AR 51); (vii) in the two years and three months preceding the administrative hearing, plaintiff had been hospitalized overnight "over a dozen times" for mental health reasons (AR 51); (viii) only "some" of the hospitalizations were due to "drug-related incidences" (AR 51-52); (ix) plaintiff had not experienced mental health problems prior to being attacked (AR 52); (x) plaintiff had not improved in the prior two years, but was "more agitated" than previously, was short-tempered, paranoid, and suicidal, became angry/frustrated "very easily," and had auditory hallucinations, difficulty

concentrating, and difficulty completing what he started (AR 52-54); and (xi) plaintiff had nightmares and erratic sleeping patterns due to his medication (AR 57).

At the administrative hearing, Dr. Joseph Malancharuvil testified, in short, that when plaintiff was using drugs he remained "totally nonfunctional," but when not using drugs, plaintiff suffered only mild limitations that would not prevent him from working. (AR 19, 32-35). Dr. Malancharuvil also testified that trauma to plaintiff's brain was not the cause of "any significant behavioral or affective disorder." (AR 36).

The ALJ gave the testifying medical expert's opinions "considerable weight in reaching a conclusion as to [plaintiff's] residual functional capacity." (AR 19). As for the lay testimony, the ALJ stated only that "[plaintiff's] mother's testimony confirmed much of [plaintiff's] testimony." (AR 16).

### 2. Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to

work). The standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

### 3. Analysis

As the above-stated facts reflect, the testimony of plaintiff's mother is, on the whole, consistent with, and corroborates plaintiff's testimony regarding his symptoms and limitations. Plaintiff's mother's testimony was competent lay evidence that the ALJ was required to take into account unless he expressly determined to disregard it and gave reasons therefor. As plaintiff notes, the ALJ's residual functional capacity assessment implicitly rejects significant portions of testimony from both plaintiff and his mother. The ALJ erred in not providing any reasons for rejecting such portions of the mother's testimony.

The Court cannot conclude that this error was harmless because it cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1055-56. If fully credited, plaintiff's mother's testimony substantially supports plaintiff's description of his symptoms and limitations, and thus could have caused a reasonable ALJ to reach a different disability determination. Accordingly, this Court cannot deem the ALJ's failure to address the lay witness testimony supplied by plaintiff's mother harmless.[2]

---

[2] Defendant suggests that because plaintiff's mother's testimony was largely consistent with plaintiff's testimony, it should be discounted for the same reasons that the ALJ discounted
(continued...)

## V. CONCLUSION[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 5, 2010

                                        /s/
                                 Honorable Jacqueline Chooljian
                                 UNITED STATES MAGISTRATE JUDGE

---

[2](...continued) plaintiff's testimony. (Defendant's Motion at 9-10). Defendant also suggests that the ALJ "implicitly rejected the portion of plaintiff's mother's testimony that was inconsistent with the medical evidence." (Defendant's Motion at 9). While the ALJ may well have discounted plaintiff's mother's statements for such reasons, he did not so state in his decision, and the Court cannot so conclude on this record. This Court may not affirm the decision of an agency on a ground that the agency did not invoke in making its decision. See Stout, 454 F.3d at 1054 ("[T]he ALJ, not the district court is required to provide [rationale] for rejecting lay testimony.") (citations omitted).

[3]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision – that the ALJ failed properly to consider a February 26, 2009 narrative report from an unidentified medical source and an October 5, 2007 conservatorship declaration from Dr. Cameron Johnson, one of plaintiff's treating physicians – except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. Nonetheless, on remand the ALJ may want to reassess such evidence (which appears to have been submitted after the administrative hearing, and thus was not reviewed by the testifying medical expert) and determine what, if any, impact it has on the disability determination.

[4]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).